IN THE DISTRICT COURT OF THE UNITED STATES

DISTRICT OF SOUTH CAROLINA

FLORENCE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CRIMINAL NO.: 4:13CR00793-TLW(1) |
| | ) | |
| vs. | ) | |
| | ) | **SENTENCING MEMORANDUM** |
| | ) | |
| **WILLIAM J. RIVERS, III** | ) | |

## **OVERVIEW**

On August 27, 2013, the government indicted Mr. Rivers, and charged him with three counts of mail fraud in violation of 18 U.S.C. § 1341. All of the charges stem from the mismanagement of the trust account at the law firm Schurlknight & Rivers. Mr. Rivers pled guilty to Count 3 on February 6, 2014, and Mr. Rivers' sentencing hearing is scheduled for May 7, 2014.

Mr. Rivers' plea agreement contains a provision pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure which provides for a sentencing range of (51-63) months imprisonment. We believe the agreement is fair and equitable to all of the parties involved in the case, and as an initial matter, we are asking the court to accept the agreed upon range.

This range is based on the total harm that Mr. Rivers caused. The only difference between the agreed upon range and the presentence report advisory guideline calculation is one case handled totally by Mr. Schurlknight which Bill Rivers had nothing to do with. These issues will be more fully discussed in open court during Mr. Rivers' sentencing hearing, but generally, these are the primary distinguishing characteristics between John Schurlknight and Bill Rivers:

1. John Schurlknight was the managing partner of the law firm;

2. John Schurlknight was responsible for disbursing settlement funds;

3. John Schurlknight started mismanaging the firm's trust account;

4. John Schurlknight lived a much more lavish lifestyle than Bill Rivers;

5. John Schurlknight was a compulsive gambler;

6. John Schurlknight was the one with the end game;

7. John Schurlknight obtained life insurance to benefit his family;

8. John Schurlknight forged documentation to remove Mr. Rivers' name from a firm life insurance policy;

9. John Schurlknight mislead Mr. Rivers about the extent of the mismanagement; and

10. John Schurlknight killed himself so his family could collect insurance benefits.

Bill Rivers is the one left to go to prison. Bill Rivers deserves to go to prison for what he did. There is no way to sugarcoat the fact that a lawyer misappropriating client funds is about the worst thing that a lawyer can do. However, the issue here is how long should Bill Rivers have to spend in prison. We are submitting this memorandum in support of our belief that three years is the appropriate sentence for Mr. Rivers.

## ACCEPTANCE OF RESPONSIBILITY

Bill Rivers accepted responsibility almost immediately. In the aftermath of John Schurlknight's suicide, Bill found about three years of bank records for the three firm accounts squirreled away in the law office. These records make up a large portion of the discovery in the

case. While it is true that the case agent could have obtained these records with a subpoena, he did not have to do so because Bill Rivers preserved them.

Further, Bill admitted to this conduct to the Office of Disciplinary Counsel, (ODC). The ODC complaints essentially make up the remainder of the discovery in this case. Mr. Rivers has cooperated fully with the ODC investigation, and he has entered into an agreement with ODC. Mr. Rivers has consented to disbarment. This agreement is winding its way through the approval process at this time.

Mr. Rivers' case began with the government sending him a target letter. This case has been going on for approximately one year. There was never any doubt that Bill would enter a guilty plea to this charge. The government has not spent one anxious moment wondering if this case would be a trial or a guilty plea. The government has not had to devote any resources toward preparing for a trial. The focus of this case has been identifying ways to assist the victims with making some recovery. To this extent Mr. Rivers has cooperated fully, and the government agrees that Mr. Rivers deserves a one level variance for this assistance.

### **"A TRUE FIRST OFFENDER"**

Bill Rivers has had one speeding ticket. He has no criminal history before this offense occurred. He does have one state charge pending, but it is related to this offense. As such, Bill Rivers has no criminal history points and is in criminal history I of the sentencing table. Criminal history category I includes defendants with zero criminal history point and defendants with 1 criminal history point. This difference is important when confronted with the question of "who is a true first time offender?"

The U.S. Sentencing Commission has recognized a need to set apart defendants who are true first time offenders from other defendants who just happen to be in criminal history category I. A follow up study by the Sentencing Commission in 2004 reveals that the Commission was set to approve a proposal regarding true first time offenders which would allow such a defendant to receive a two-level reduction as long as the offense did not involve violence or weapons. [1]

There have been several proposals for what constitutes a true first offender. In one proposal, true first offenders had no criminal history and included offenders who had a minor traffic offense like speeding. Another proposal considered true first offenders as those who had no arrests of any kind. These folks were placed in group A. Group B consisted of folks who had been arrested but not convicted of anything and thus no criminal history points. Group C consisted of folks who had a conviction for a minor offense that are never counted in someone's criminal history pursuant to USSG § 4A1.2(c)(2).

The Commission never adopted the proposal, because of a lack of recidivism data. The 2004 follow-up report shows that Group A and Group C offenders have very low recidivism rates. Group B's recidivism rate is much higher (17.2%) than Group A and Group C offenders who had rates of (6.8% and 8.8%) respectively. The report shows that Group A and Group C are essentially the same, particularly when the only offense on someone's record is a speeding ticket.

This report is from May 2004. This date is important, because the <u>Blakely</u> case came out right around this time. In 2005, the guidelines became advisory. It is now within the court's

---

[1] This report is available at:

http://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2004/200405_Recidivism_First_Offender.pdf

discretion to treat someone as a true first time offender, and reduce their advisory range accordingly.

## JUST PUNISHMENT

In 1997, the U.S. Sentencing Commission issued a research bulletin in which more than 1,700 citizens gave their opinions on punishment and crime seriousness issues.[2] This survey involved the use of a series of crime examples which incorporated relevant offense and offender characteristics.

For fraud offenses, the example crimes were (1) a doctor submitting false medicare claims, (2) selling worthless stocks to consumers, and (3) causing a savings and loan failure. Causing a savings and loan failure is more like the offense in this case. Both offenses are examples of criminal mismanagement which resulted in losses to depositors and stockholders and here, personal injury clients. In both examples, savings and loan officers like Mr. Rivers would have been operating in a fiduciary capacity with the clients. This study revealed that 58.4% to 64.3% of the respondents favored a sentence below the guideline range for the savings and loan failure scenario. Coincidentally, the proposed guideline range for this scenario was (51-63) months. The median just punishment respondent preference was 15 months less than the guideline range. 15 months less than this range is a range of (36-48) months.

Providing just punishment is one of the sentencing factors the court must consider, and this

---

[2] This report is available at:

http://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-projects-and-surveys/miscellaneous/199703_Just_Punishment.pdf

report is empirical data on the issue of just punishment from the U.S. Sentencing Commission.

## OTHER LAWYER MISCONDUCT

Allen Lewis was an attorney in Florence who engaged in the same conduct as Bill Rivers. Mr. Lewis practiced alone and began mismanaging his trust account. He did not have a partner that began the process first. This is conduct that Mr. Lewis was responsible for himself. The transcript of Mr. Lewis' sentencing hearing reveals that he was sentenced to 27 months. This was the low number of the range (27-33) months which is derived from an offense level of 18 and a criminal history category of I. The restitution amount was over $400,000.

The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct is another factor the court must consider in determining the appropriate sentence.

## EXTRAORDINARY REMORSE

In November of 2013, Mr. Rivers took steps to be able to speak to the victims of this offense. Mr. Rivers was willing to sit down and talk with all of the victims who wanted to speak to him about the offense and apologize. Mr. Rivers requested a modification of his bond conditions to allow for this type of contact to occur. The result of the hearing was that the U.S. Attorney's Office sent out letters to the victims letting them know that Bill was available to speak to them about the offense. Bill did not want the victims to hear him speak about the offense for the first time at his sentencing hearing. As painful as it would have been, Bill wanted to speak to them individually first and hopefully provide a mechanism for the healing process to begin.

**CONCLUSION**

      For all of the reasons stated above and discussed in open court, Mr. Rivers respectfully asks this Honorable Court to vary downwardly from the range of (51-63) months and impose a sentence of 36 months.

                                              Respectfully Submitted,

                                              /s/ Michael A. Meetze,
                                              Assistant Federal Public Defender
                                              McMillan Federal Building
                                              401 W. Evans Street, Suite # 105
                                              Florence, South Carolina 29501
                                              Phone: (843) 662-1510
                                              ***Attorney ID #: 6662***

Florence, South Carolina

May 6, 2014